1   ROBERT T. SULLWOLD (SBN 88139)
    JAMES A. HUGHES (SBN 88380)
2   SULLWOLD & HUGHES
    235 Montgomery Street, Suite 730
3   San Francisco, CA  94104
    (415) 263-1850
4   (415) 989-9798 FAX

5   Attorneys for
    WALTER B. HERBERT

6

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  VIEWPOINT AT THE RIDGE OWNERS            Case No.:  C 10-03414 PJH
    ASSOCIATION, a California nonprofit
12  corporation,
                                             STIPULATION AND ORDER GRANTING
13                     Plaintiff,            LEAVE TO DEFENDANT WALTER B.
                                             HERBERT TO FILE THIRD PARTY
14                                           COMPLAINT

15           v.

16

17  WALTER B. HERBERT,

18                     Defendant.

19

20          IT IS HEREBY STIPULATED by the parties hereto, through their undersigned counsel,

21  that Defendant Walter B. Herbert shall have leave to file the Third Party Complaint attached as

22  Exhibit 1.

23  DATED:  February 11, 2011                JAMES A. HUGHES
                                             SULLWOLD & HUGHES
24

25

26                                           /s/ James A. Hughes
                                             _____
27                                                      James A. Hughes
                                                 Attorneys for Defendant and
28                                           Third Party Plaintiff Walter B. Herbert

                                    1

STIPULATION AND ORDER GRANTING LEAVE TO FILE
THIRD PARTY COMPLAINT                                       C 10-03414 PJH

1   DATED: February 14, 2011                      AUNE & ASSOCIATES

2

3                                                 /s/ Robert E. Aune

4                                                 By: Robert E. Aune, Attorneys for
                                                  Plaintiff Viewpoint At the Ridge Owners
5                                                 Association

6
    *Filer's Attestation: Pursuant to General Order No. 45, Section X(B), the filer hereby attests that the*
7
    *signatories' concurrence in the filing of this document has been obtained.*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          2

    STIPULATION AND ORDER GRANTING LEAVE TO FILE
    THIRD PARTY COMPLAINT                                          C 10-03414 PJH

## <u>ORDER</u>

The parties having stipulated and good cause appearing therefor;

IT IS ORDERED that Defendant Walter B. Herbert is granted leave to file the third party complaint in the form attached to the parties' stipulation.

March 16
DATED: ~~February~~ _____, 2011



_____
United States District Court Judge

STIPULATION AND ORDER GRANTING LEAVE TO FILE
THIRD PARTY COMPLAINT                                    C 10-03414 PJH

ROBERT T. SULLWOLD (SBN 88139)
JAMES A. HUGHES (SBN 88380)
SULLWOLD & HUGHES
235 Montgomery Street, Suite 730
San Francisco, CA  94104
(415) 263-1850
(415) 989-9798 FAX

Attorneys for
WALTER B. HERBERT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIEWPOINT AT THE RIDGE OWNERS ASSOCIATION, a California nonprofit corporation, <br><br> Plaintiff, <br><br> v. <br><br> WALTER B. HERBERT, <br><br> Defendant. | Case No.:  C 10-03414 PJH |
| WALTER B. HERBERT, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> ADRIAN BARROW, JANE VAN EPPS, TONI WILSON, and JEAN BATES & ASSOCIATES, <br><br> Third-Party Defendants. | |

THIRD-PARTY COMPLAINT OF WALTER B. HERBERT

# EXHIBIT 1

1

Defendant and Third-Party Plaintiff Walter B. Herbert ("Herbert"), for his Third-party Complaint, alleges:

## BACKGROUND

1.   Plaintiff Viewpoint at the Ridge Owners Association ("VATR") filed a complaint against Herbert in state court, which Herbert subsequently removed to this court.  A copy of VATR's complaint is attached to this third-party complaint as Exhibit "A."  Without admitting the truth thereof, the allegations of plaintiffs' complaint are incorporated herein by this reference.

2.   In its complaint, VATR alleges that Herbert, who was engaged by VATR as its investment adviser, mishandled the investment of its funds, resulting in an alleged loss of $3 million.  VATR's complaint alleges four counts: Negligence, Breach of Fiduciary Duty, Negligent Misrepresentation, and Fraud & Deceit.  Herbert has filed an answer denying the material allegations of VATR's complaint.

3.   If VATR were to establish Herbert's liability under any of the complaint's counts, then Third-Party Defendants, and each of them, are also liable to VATR for negligence, breach of fiduciary duty and/or breach of contract, as a result of their (1) approving investment of VATR's funds in instruments that were subject to market risk; (2) failing adequately to monitor the status of VATR's investments; (3) failing to require sale of investments subject to market risk upon discovery of the nature of such risk; and (4) preventing the taking of defensive measures at a time of market volatility.  The actions of Third-Party Defendants caused, in whole or in part, the harm or losses alleged by VATR.  As a result, if Herbert is found liable for any of the claims brought by VATR, then the Third-Party Defendants, and each of them, are liable for contribution or equitable indemnification in an amount proportionate with their share of fault.

## PARTIES AND JURISDICTION

4.   Herbert is a resident of Massachusetts.

5.   Herbert is informed and believes and on that ground alleges that third-party defendant Adrian Barrow is a resident of Brisbane, California.  Barrow was a member of the board of directors of VATR during relevant period up to October 21, 2008.  As a member of the board of directors, Barrow owed a fiduciary duty and duty of due care to VATR.

6.   Herbert is informed and believes and on that ground alleges that third-party defendant Jane Van Epps is a resident of Brisbane, California.  Van Epps was a member of the board of directors of VATR from September 18, 2007 to October 21, 2008.  As a member of the board of directors, Van Epps owed a fiduciary duty and a duty of due care to VATR.

7.   Herbert is informed and believes and on that ground alleges that third-party defendant Toni Wilson is a resident of Brisbane, California.  Wilson was a member of the board of directors of VATR from July 15, 2008 to October 21, 2008.  As a member of the board of directors, Wilson owed a fiduciary duty and a duty of due care to VATR.

8.   Herbert is informed and believes and on that ground alleges that third-party defendant Jean Bates & Associates, Inc. ("Bates") is a California Corporation with its principal place of business in Danville, California.  VATR and Bates entered into a contract in February, 2001 pursuant to which Bates was engaged to manage VATR's day-to-day affairs.  A true and correct copy of the contract between VATR and Bates is attached hereto as Exhibit "B."  Bates accordingly owed both contractual obligations and a duty of care to VATR.

9.   Barrow, Van Epps, Wilson, and Bates are collectively referred to as the "Third-Party Defendants."

10. The Court has original jurisdiction of this third-party complaint under 28 U.S.C. §1332, in that it is an action between citizens of different states and the matter in controversy, as alleged in the state court complaint, exceeds the sum of $75,000, exclusive of costs and interest.

## GENERAL ALLEGATIONS

11.  As directors, Barrow, Van Epps and Wilson were charged with the ultimate responsibility of managing VATR's affairs.  By virtue of their position, they were in a confidential and fiduciary relationship with VATR and owed VATR the highest obligations of good faith, fair dealing and candor recognized under the law.

12. Herbert served as investment adviser at the pleasure of VATR's board and in that role was at all times subject to its supervision and direction.  Although a member of VATR's board, Herbert abstained from any decision concerning its investments.  Decisions as to the nature of VATR's investments were ultimately the responsibility of VATR's board, including Barrow, Van Epps and

3

Wilson, who were obligated to become informed and make knowledgeable decisions with respect to such investments.  In discharging these obligations, Barrow, Van Epps and Wilson were required to act with at least such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.

13. Barrow and Van Epps approved an investment policy for VATR that contemplated placing a significant portion of its funds in positions that could fluctuate in value with the market.  If, as VATR now contends, it was negligent and wrongful to invest its funds in such a manner, then Barrow and Van Epps were negligent in approving such approach and failed to satisfy their fiduciary obligations to VATR.

14. Herbert is informed and believes and on that ground alleges that Barrow at all times had complete access to information about the nature and status of VATR's investment account and therefore knew that it was invested in part in positions that bore market risk and approved of such investment strategy.  If, as VATR now alleges, it was negligent and wrongful to have its funds invested in such a manner, then Barrow, who was VATR's President during most of this period, was negligent and failed to satisfy his fiduciary obligations to VATR in not bringing these facts to the attention of the entire VATR board or otherwise taking action to mitigate or eliminate such risk.

15. At the very least, based on VATR's allegations, Barrow, Van Epps, and Wilson failed to act with due care or to make reasonable inquiry in that they did not inform themselves of the nature of VATR's investment portfolio in a timely fashion.  Had they done so, VATR's loss, if any, could have been avoided or mitigated in substantial degree.

16. At the point each of them became aware of the nature of VATR's investment portfolio, Barrow, Van Epps and Wilson failed to act with due care in that they took no action to avoid the very risks, by then known to them, that VATR alleges subsequently caused its investment loss.  To the contrary, Barrow and Van Epps, in particular, took steps to prevent any action to reduce such risks by freezing VATR's investment account.  Had Barrow, Van Epps and Wilson acted with reasonable care, VATR's loss, if any, could have been avoided or mitigated in substantial degree.

17. Bates failed to act with due care in discharging its duties as manager under its contract with VATR.  Among other things, Bates (1) failed to provide accurate monthly financial reports

to VATR's Board as required by its contract; and (2) failed to include statements from Ameritrade showing the nature and status of VATR's investments in the packets Bates distributed to VATR's board in preparation for each board of directors' meeting.  Had Bates provided this documentation to VATR board members, the nature and status of VATR's investments would have been known to each director immediately and VATR's investment loss, if any, could have been avoided or mitigated in substantial degree.

## FIRST CAUSE OF ACTION

### (APPORTIONMENT OF FAULT/EQUITABLE INDEMNITY)

18. Herbert incorporates by this reference paragraphs 1 through 17, inclusive, and realleges such paragraphs as though fully set forth herein.

19. The Third-Party Defendants, and each of them, were responsible, in whole or in part, for the injuries, if any, suffered by VATR.

20. If Herbert is judged liable to VATR, each of the Third-Party Defendants should be required (1) to pay a portion of VATR's judgment which is in proportion to the comparative negligence of that cross-defendant in causing VATR's damages; and (2) to reimburse Herbert for any payments he makes to VATR in excess of his proportional share of all cross-defendants' liability.

WHEREFORE, Herbert prays judgment as set forth below.

## SECOND CAUSE OF ACTION

### (DECLARATORY RELIEF)

21. Herbert incorporates by this reference paragraphs 1 through 17, inclusive, and realleges such paragraphs as though fully set forth herein.

22. An actual controversy has arisen and now exists between Herbert and the Third-Party Defendants concerning their respective rights and responsibilities because Herbert contends that the Third-Party Defendants are obligated to indemnify Herbert in whole or in part in proportion to the comparative fault attributable to each.  Herbert is informed and believes and on that ground alleges that the Third-Party Defendants deny any such obligation.

23. Herbert desires a judicial determination of the respective rights and duties of Herbert and each of the Third-Party Defendants with respect to the damages and other monetary relief sought by

5

VATR against Herbert.  In particular, Herbert desires a declaration that each of the Third-Party Defendants is liable for any damages suffered by VATR in proportion to such Third-Party Defendant's comparative fault.

24. Such a declaration is necessary and appropriate at this time in order that Herbert may ascertain his rights and duties with respect to the damages and other monetary relief sought by VATR. Furthermore, the claim by VATR against Herbert and the claim by Herbert against the Third-Party Defendants arise out of the same transaction, and determination of both in one proceeding is necessary and appropriate in order to avoid the multiplicity of actions that would result if Herbert is required now to defend against the claim by VATR and then bring a separate action against the Third-Party Defendants for equitable indemnification of sums that Herbert may be compelled to pay as the result of any damages, judgment, or other awards recovered by VATR against Herbert.

WHEREFORE, Herbert prays judgment as follows:

1.  Judgment in a proportionate share from each Third-Party Defendant;

2.  A judicial determination that Third-Party Defendants were the legal cause of any injuries or damages sustained by VATR and that Third-Party Defendants indemnify him, either completely or partially, for any sum of money that may be recovered against him by VATR;

3.  For costs and expenses;

4.  For such other and further relief as the Court deems just and proper.

DATED:  February ___, 2011.

ROBERT T. SULLWOLD
JAMES A. HUGHES
SULLWOLD & HUGHES


_____
James A. Hughes
Attorneys for
Walter B. Herbert

1

2  BRANDEN E. BICKEL, S.B.N. 50125
   Bickel & Associates
3  6114 La Salle Avenue, Suite 510
   Oakland, CA 94611
4  Telephone (510) 595-8200
   Facsimile: (510) 595-8600

5  ROBERT AUNE, S.B.N. 60477
   Aune & Associates
6  505 Sansome Street, 6th Floor
   San Francisco, CA 94111
7  Telephone (415) 433-6400
8  Facsimile: (415) 433-1660

9  Attorneys for Plaintiff
   Viewpoint At The Ridge Owners Association

10

11         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                  **COUNTY OF SAN MATEO**

13              **(Unlimited Civil Jurisdiction)**

14

15  VIEWPOINT AT THE RIDGE OWNERS          )  CASE NO.  CIV 495405
16  ASSOCIATION, a California nonprofit corporation,)
                                           )
17              Plaintiff,                 )
                                           )  **COMPLAINT FOR**
18      v.                                 )  **NEGLIGENCE, BREACH OF**
                                           )  **FIDUCIARY DUTY,**
19                                         )  **NEGLIGENT**
    WALTER B. HERBERT, aka WALTER B.       )  **MISREPRESENTATION,**
20  HERBERT JR., aka WALTER B. GAUTHIER, aka)  **FRAUD, DECEIT AND**
    WALTER B. POLEWARCZYK JR., and Doe 1   )  **DAMAGES**
21  through Doe 50, inclusive,             )
                                           )
22              Defendants.                )  BY FAX
                                           )
23  _____   )

24      Plaintiff VIEWPOINT AT THE RIDGE OWNERS ASSOCIATION ("Association")

25  alleges:

26

BICKEL & ASSOCIATES
ATTORNEYS AT LAW
6114 LA SALLE AVE.
SUITE 510
OAKLAND, CA 94611

Complaint - Unlimited Civil Jurisdiction              1

**EXHIBIT A**

1. The Association is a California non-profit mutual benefit corporation established for the purpose of managing and operating a condominium project known as "Viewpoint At The Ridge" ("VATR") located at Mission Blue Drive, Brisbane, CA 94005, pursuant to the provisions of Civil Code § 1351(a) and of the Association's governing documents.

2. Defendant Walter B. Herbert, also known as Walter B. Herbert Jr., also known as Walter B. Gauthier, also known as Walter B. Polewarczyk Jr., ("Herbert"), is an adult individual who formerly lived at VATR, who was a member of Association, who was an elected director of the Association, and who also acted as a paid investment manager/advisor for the Association while he was an owner and director. The allegations of this complaint arise out of Herbert's mismanagement of the Association's investment account.

3. Plaintiff does not know the true names and/or capacities of defendants designated Doe 1 through Doe 50, and, therefore, sues them by fictitious names. Plaintiff is informed and believes that each fictitious named defendant is in some manner responsible for the wrongful acts alleged in this complaint and the resulting damage to the Association. Plaintiff will amend this complaint, if necessary, to allege their true names and capacities when they are ascertained.

4. Plaintiff alleges on information and belief that at all relevant times herein mentioned each defendant was the agent, employee, controlling or controlled person, aider, abettor, successor, predecessor, principal and/or alter ego, or co-conspirator of some or all of the other defendants, and that in connection with the acts, practices, omissions and breaches set forth below, was acting in the course and scope of those relationships. Notwithstanding the foregoing, to the extent that the relationship of any defendant to any other defendant would have the legal effect of exonerating either of them from liability to the Association, such relationship is to that extent alone not specifically alleged herein.

BICKEL & ASSOCIATES
ATTORNEYS AT LAW
6114 LA SALLE AVE.
SUITE 510
OAKLAND, CA 94611

Complaint - Unlimited Civil Jurisdiction          2

# FACTS

5. At a board meeting on July 22, 2003, while a director, Herbert recommended that the Association retain him to act as the Association's investment manager/advisor to manage the investment account of VATR.  As an inducement Herbert offered to charge a management fee of 1% of the assets under management, which was 1.5% lower than the management fee of 2.5% charged by the Association's previous fund manager Morgan Stanley.  The board agreed.

6. On September 2, 2003, the president and another board member signed a document authorizing the transfer of the Association's reserves held by Morgan Stanley to a newly opened account at Ameritrade.  Herbert was given full discretionary authority to the assets of the account.  The same day Herbert offered and the Association signed a "Financial Services Agreement" prepared by Herbert stating the terms of his service.  The "Financial Services Agreement" stated the investment criteria as:

> Investment Criteria: Investments shall be made only in no-load mutual funds, bonds and money market funds, select U.S. stocks, deeds of trust on U.S. real property, and in income producing real property investments, except as otherwise indicated by Client.  .  .

The agreement acknowledged this criteria involved "substantial financial risk" and disclaimed responsibility for "preservation of capital" in the following language:

> .  .  . No representations have been made, nor are any offered regarding guaranteed rates of return or preservation of capital. *Client understands that by employing WBH to manage his money client is subjecting his money to substantial financial risk.*  .  .  .

7. Herbert improperly, erroneously and fraudulently obtained the Association's signature on the "Financial Services Agreement" that did not reflect the Association's true investment goals and tolerance for risk and that were directly contrary to what Herbert knew or should have known the Association's needs to be inasmuch as he was a board member for much of the time.

8. Reserve funds are money collected from Association members for the repair and

Complaint - Unlimited Civil Jurisdiction          3

BICKEL & ASSOCIATES
ATTORNEYS AT LAW
6114 LA SALLE AVE
SUITE 510
OAKLAND, CA 94611

replacement of major components of the property with a remaining service life of 30 years or less which the Association maintains.  Reserve funds may only be spent to repair, restore, replace, and maintain such major components except in extraordinary circumstances.

9.  Under Herbert's management irregularities began to emerged.  The cost bases of securities previously held by Morgan Stanley were not established and carried over to the Ameritrade account, statements from both accounts went missing, account balances were not reconciled (despite protests from the Association's accountant), and, later, reserve funds were co-mingled with proceeds recovered from a construction defect lawsuit without any attempt to keep a separate accounting for each.

10. In 2006 the Association settled a construction defect lawsuit and the settlement funds were paid in increments through June 2007.  The association received and deposited into its operating account settlement funds totaling $6,578,993, of which $6,413,266 was transferred to the reserves (i.e., "investment account") and the $165,727 difference was not separately accounted for and presumably used for operating expenses.  As to those funds transferred to the reserves or "investment account," Herbert made no mention of using a different investment criteria than the one stated in his "Financial Services Agreement" and no separate investment criteria was established or utilized notwithstanding the fact that the proceeds from the settlement would be needed in the near future for repair and reconstruction of the property.  Because the cost bases of the non-litigation reserves had not been established and the exact value could not be determined, the non-litigation reserves were assigned an arbitrary value of $650,000 at the time they were co-mingle with litigation proceeds.  Co-mingling, diverse investments, lack of segregated accounting, and lack of period reconciliation made it impossible for the Association to properly account for its three main financial components: operating funds, reserve funds and settlement funds.

11. Herbert's investment program was designed for long-term growth that could ride

BICKEL & ASSOCIATES
ATTORNEYS AT LAW
6114 LA SALLE AVE
SUITE 510
OAKLAND, CA 94611

out short-term market fluctuations. Herbert knew or should have known that the Association stood in a fiduciary relationship with respect to funds held for the benefit of its members. The proper investment criteria should have been "preservation of capital," particularly for litigation proceeds known to be needed in the immediate future for repair and reconstruction of the property. Instead, all reserve and settlement funds were deposited into the "investment account" and managed under the program with the same investment criteria reflected in Herbert's "Financial Services Agreement".

12.   During late 2007 and 2008 the investment account experienced substantial unrealized losses. According to the report of the Association's certified public accountant, the losses from December 31, 2007 to November 30, 2008 were:

| Quarter Ending | Net Unrealized Losses |
| --- | --- |
| 12/31/2007 | ($92,259) |
| 3/31/2008 | ($361,637) |
| 6/30/2008 | ($342,574) |
| 9/30/2008 | ($1,505,419) |
| 11/30/2008 | ($2,427,983) |

13.   Despite a net unrealized loss of $361,637 as of March 31, 2008, Herbert recommended investing an additional $500,000 in equities at a board meeting on May 20, 2008. Thus, during 2008, a period of mounting net unrealized losses, Herbert moved substantial Association funds from safer money market investments to more risky equities and corporate bonds.

14.   From November 2007 to November 2008 when the Dow Jones Industrial average fell from 13,595 to 8,829 (35% decline), the Association's investment portfolio shifted its equity positions from 23% of the total portfolio to 39%, a 70% increase. The move from stable, low-risk investments such as certificates of deposit and money market accounts to more risky equities and

BICKEL & ASSOCIATES
ATTORNEYS AT LAW
6114 LA SALLE AVE.
SUITE 510
OAKLAND, CA 94611

Complaint - Unlimited Civil Jurisdiction          5

corporate bonds was inappropriate and constituted both negligence and breach of fiduciary duty to the Association and its members.

15.  Despite Herbert's fiduciary duty to the Association, Herbert engaged in a strategy of aggressive, high risk trading, on the Association's account, including but not limited to, trading in speculative investments and illiquid investments when he knew or should have known that funds secured in the construction defect lawsuit would be needed in the near future

16.  Herbert did not disclose the mounting losses until late spring of 2008.  By the summer of 2008 widespread concern had arisen over portfolio mis-management.  On June 17, 2008, the Association froze the investment account to restrict Herbert's access and ability to trade.  In the following months, the Association investigated a replacement for Herbert, and, when no satisfactory replacement could be found, Herbert resigned as investment manager/advisor on October 28, 2008.  The entire board was replaced in November 2008.

17.  During the course of Herbert's handling of plaintiff's account in the manner described above, Herbert actively misrepresented and/or omitted from his communications with plaintiff all of the salient details about the composition of the investment account and the mounting net unrealized losses.  In his communications with plaintiff, Herbert repeatedly and falsely advised plaintiff the funds were invested in vehicles that were "safe".

### FIRST CAUSE OF ACTION
### (Negligence)

18.  Plaintiff incorporates by reference Paragraphs 1 through 17, above, as though fully set forth in this cause of action.

19.  Defendant had a duty to act in a manner as a reasonably prudent investment manager/advisor would do under the same or similar circumstances in the San Francisco Bay Area when

BICKEL & ASSOCIATES
ATTORNEYS AT LAW
6114 LA SALLE AVE
SUITE 510
OAKLAND, CA 94611

Complaint - Unlimited Civil Jurisdiction          6

managing funds for a client who stands in a fiduciary capacity with respect to the funds under the fiduciary's control.

20. Defendant fell below the standard of care required of an investment manager/advisor in managing the Association's investment account by, among other things: (i) pursuing an investment program designed primarily for long term growth "over the full market cycle" rather than for "preservation of capital," (2) pursuing an investment program that involved exposure to "substantial financial risk," (3) investing in equities, (4) investing in more equities when the markets were becoming increasingly unstable, (5) moving from stable, low-risk investments such as certificates of deposit and money market accounts to equities where more transactions could be executed without oversight, (6) failing to keep the Association apprised of mounting net unrealized losses until late Spring 2008, (7) inserting terms in his "Financial Services Agreement" granting him full discretionary authority to invest in virtually any type of security, even those involving "substantial financial risk," and (8) misrepresenting and/or omitting from his communications with plaintiff all of the salient details about the composition the investment account and the mounting net unrealized losses.  These acts and others constitute negligence.

21. As a direct and proximate result of defendant's negligence, the Association suffered losses of more than $3,000,000 in its investment account, calculated on both the loss in portfolio value and return that would have been earned if the funds had been properly invested.

WHEREFORE, plaintiff prays for judgment has hereafter set forth.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

22. Plaintiff incorporates by reference Paragraphs 1 through 17, above, as though fully set forth in this cause of action.

BICKEL & ASSOCIATES
ATTORNEYS AT LAW
6114 LA SALLE AVE.
SUITE 510
OAKLAND, CA 94611

Complaint - Unlimited Civil Jurisdiction          7

23. Defendant owed a fiduciary duty to the Association in his role as investment manager/advisor with full discretionary authority. Defendant knew or should have known that the Association owed a fiduciary duty to its members to manage their funds in such a manner that they were not exposed to "substantial financial risk." For an investment manager/advisor to invest in anything other than so-called risk-free instruments such as certificates of deposit, U.S. treasury securities, or money market funds is a departure from his fiduciary responsibility to preserve the principal balance of invested funds held for the benefit of Association members.

24. Defendant breached his fiduciary duty to the Association by, among other things: (1) pursuing an investment program designed primarily for long term growth "over the full market cycle" rather than for "preservation of capital," (2) pursuing an investment program that involved exposure to "substantial financial risk," (3) by investing in equities, (4) by investing in more equities when the markets were becoming increasingly unstable, (5) by moving from stable, low-risk investments such as certificates of deposit and money market accounts to equities where more transactions could be executed without oversight, (6) by failing to keep the Association apprised of mounting net unrealized losses until late Spring 2008, (7) by inserting terms in his "Financial Services Agreement" giving him full discretionary authority to invest in virtually any type of security, even those involving "substantial financial risk," and (8) misrepresenting and/or omitting from his communications with plaintiff all of the salient details about the composition of the investment account and the mounting net unrealized losses.

25. As a direct and proximate of defendant's breach of fiduciary duty, the Association suffered losses of more than $3,000,000 in its investment account, calculated on both the loss in portfolio value and the return that would have been earned if the funds had been properly invested.

WHEREFORE, plaintiff prays for judgment as hereafter set forth.

BICKEL & ASSOCIATES
ATTORNEYS AT LAW
8114 LA SALLE AVE.
SUITE 510
OAKLAND, CA 94611

Complaint - Unlimited Civil Jurisdiction          8

## THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

26. Plaintiff incorporates by reference Paragraphs 1 through 17, above, as though fully set forth in this cause of action.

27. Defendant, as a fiduciary with respect to the Association, owed it a duty of loyalty and full disclosure.

28. During the late 2007 and early 2008, defendant actively misrepresented and/or omitted from his communications with plaintiff all of the salient details about the composition of the account and the mounting net unrealized losses.  In his communications with plaintiff, Herbert repeatedly and falsely advised plaintiff that the funds were invested in vehicles that were "safe".

29. The Association relied on Herbert to provide accurate information regarding the status of the investment account and trusted that he would keep them informed of significant adverse conditions.

30. The Association reliance on Herbert's representations was to its financial detriment, in that plaintiff was forced to liquidate many of the investment vehicles on disadvantageous terms to preserve the remaining capital in truly safe investments.

31. As a direct and proximate of defendant's negligent misrepresentation, the Association suffered losses of more than $3,000,000 in its investment account, calculated on both the loss in portfolio value and the return that would have been earned if the funds had been properly invested.

WHEREFORE, plaintiff prays for judgment as hereafter set forth.

## FOURTH CAUSE OF ACTION
### (Fraud & Deceit)

32. Plaintiff incorporates by reference Paragraphs 1 through 17, above, as though fully

BICKEL & ASSOCIATES
ATTORNEYS AT LAW
5114 LA SALLE AVE
SUITE 510
OAKLAND, CA 94611

Complaint - Unlimited Civil Jurisdiction                    9

set forth in this cause of action.

33.  Defendant, as a fiduciary with respect to the Association, owed it a duty of loyalty and full disclosure.

34.  During the late 2007 and early 2008, defendant made representations to the Association that the investment fund was doing fine even though there was instability in the markets, when, in fact, the investment account was suffering mounting net unrealized losses, which Herbert knew and failed to disclose.

35.  Herbert shifted the Association's equity positions from 23% of the total portfolio to 39%, a 70% increase.  The move from stable, low-risk investments such as certificates of deposit and money market accounts to more risky equities and corporate bonds was an attempt by Herbert to make up for trading losses that he had incurred.  Essentially, he was gambling with assets in the Association's investment account to make up for losses he had incurred in inappropriate investments.

36.  The Association relied on Herbert to provide it with accurate information regarding the status of the investment account, that he would make appropriate investments, that he would not gamble with their money, and that he would keep them informed of significant adverse developments.

37.  If Herbert had disclosed the true fact regarding the mounting net unrealized losses in 2007 and 2008, and his attempt to make up for the loss with more risky investments, the Association would have discharged him and sought an immediate replacement.

38.  The Association's reliance on Herbert's representations was to its financial detriment, in that plaintiff was forced to liquidated many of the investment vehicles on disadvantageous terms to preserve the remaining capital in truly safe investments.

39.  As a direct and proximate of defendant's negligent misrepresentation, the Association suffered losses of more than $3,000,000 in its investment account, calculated on both the

BICKEL & ASSOCIATES
ATTORNEYS AT LAW
6114 LA SALLE AVE.
SUITE 510
OAKLAND, CA 94611

Complaint - Unlimited Civil Jurisdiction          10

loss in portfolio value and the return that would have been earned if the funds had been properly invested.

40.  The aforementioned acts and omissions of Herbert constitute fraud and deception such that plaintiff is entitled to an award of $3,000,000 in punitive damages in addition to and exclusive of compensatory damages.

WHEREFORE, the Association prays for judgment against defendants as follows:

(1)   For compensatory damages of $3,000,000 or according to proof at trial;

(2)   For punitive damages of $3,000,000 or according to proof at trial; and

(3)   For pre-judgment interest on the award of compensatory damages; and

(4)   For an award of  attorney fees; and

(5)   For an award of costs suit; and

(6)   For such other and further relief as the court may deem proper.

Dated: May 25, 2009.          BICKEL & ASSOCIATES

Branden E. Bickel, Attorney for
Viewpoint at the Ridge Owners Association

ICKEL & ASSOCIATES
ATTORNEYS AT LAW
6114 LA SALLE AVE.
SUITE 510
OAKLAND, CA 94611

Complaint - Unlimited Civil Jurisdiction          11

RECEIVED FEB 2 3 2001

# MANAGEMENT SERVICE AGREEMENT BETWEEN JEAN BATES & ASSOCIATES AND VIEWPOINT AT THE RIDGE OWNERS ASSOCIATION

THIS AGREEMENT (hereinafter "Agreement"), is made this _16_ day of _FEB_. 200_1_, by and between Jean Bates & Associates (hereinafter called "MANAGER"), a California Corporation, VIEWPOINT AT THE RIDGE OWNERS ASSOCIATION (hereinafter called "ASSOCIATION"), a California non-profit corporation.

## WITNESSETH

In consideration of the mutual promises, covenants and conditions herein contained, the undersigned parties agree:

## ARTICLE I
### General Conditions

**1.1    Retention of MANAGER.**   The ASSOCIATION hereby retains MANAGER to manage the day-to-day affairs of the ASSOCIATION on the terms and conditions set forth in this Agreement, and MANAGER agrees to act as manager of the ASSOCIATION and ASSOCIATION property (hereinafter "Property"), located in BRISBANE, California, for a term of one year commencing on the _1ST_ day of _APR_,200_1_.

**1.2    Status of MANAGER.** Manager is an independent contractor with respect to those matters covered by this Agreement, except as that relationship may be changed to that of agent for a specific purpose pursuant to resolution of the ASSOCIATION's Board of Directors (hereinafter "Board").

**1.3    Role of MANAGER.** MANAGER shall assist the Board in the management, operation and administration of the ASSOCIATION. MANAGER shall perform its duties, responsibilities and obligations under this Agreement in accordance with the ASSOCIATION's Articles of Incorporation, CC&Rs, By-laws, Rules and Regulations and other policies and procedures established by the Board (hereinafter collectively referred to as the "Project Documents"), and the attached Viewpoint at the Ridge Owners Association. MANAGER and the Board shall be available at reasonable times to confer regarding the performance of the services set forth herein.

**1.4    Liability of MANAGER.** The ASSOCIATION shall indemnify and hold harmless and defend at it's own cost MANAGER from all claims, actions, liabilities and damages (including attorney's fees and litigation costs) caused in whole or in part by the negligence or willful misconduct of the ASSOCIATION, any member of the ASSOCIATION or any other party, except to the extent same are caused by the negligence or willful misconduct of MANAGER, its employees or agents; and shall indemnify and hold MANAGER harmless from all claims, actions, liabilities and damages (including attorney's fees and litigation costs) asserted or threatened by or on behalf of any member of the Association or other party not under MANAGER's direct and exclusive control arising out of or related to any act committed by MANAGER in good faith while carrying out the policies and/or instructions of the ASSOCIATION.

1

**EXHIBIT B**

V17384

## ARTICLE II
### Financial Management

**2.1     Scope of Article.** MANAGER shall perform the following routine financial services.  All JBA's handling of Viewpoint at the Ridge Owners Association funds will comply with the provisions of Civil Code 1363.2.  The services provided by JBA are in support of the Board's discharge of its responsibilities under Civil Code 1365.5.

**2.01     Assessment Collection.** MANAGER shall prepare and mail to the membership monthly assessment billing coupons.  MANAGER shall collect all assessments or other income received by the ASSOCIATION.

**2.02     Delinquency Follow-up.** MANAGER shall be responsible for collecting delinquent assessments and other charges in accordance with the procedures established by the ASSOCIATION.  MANAGER shall maintain delinquent assessment records, and shall submit to the Board on a monthly basis an aged monthly delinquency list.

**2.03     Lien Enforcement Policy and Practices.** MANAGER shall prepare and revise as necessary a policy statement describing the ASSOCIATION's  policies and practices in enforcing lien rights or pursuing other legal remedies for the collection of delinquent assessments in accordance with the provisions of Civil Code 1365 (d). MANAGER shall deliver the policy statement, as approved by the Board, to the membership within sixty (60) days prior to the beginning of the ASSOCIATION's fiscal year.  An additional fee for filing and releasing liens, and for costs of filing small actions will be charged as provided in Paragraph 7.2 of Article VII, below.

**2.04     Foreclosure Proceedings.** At the direction of the Board, MANAGER shall act as liaison to the Board in retaining counsel to instigate, foreclosure or collection proceedings on delinquent accounts or take any other authorized legal action.  MANAGER shall provide the attorney with all available information and records necessary to effect this action.

**2.05     Invoice Approval.** MANAGER shall review and approve all invoices for budgeted items and Board-approved expenditures, and report to the Board all apparent discrepancies or irregularities.  MANAGER shall submit all bills for unbudgeted items to the Board for review and approval prior to payment.

**2.06     Invoice Payment.** MANAGER shall not make any expenditure nor incur any obligation exceeding $500.— without the prior consent of the Board.  Notwithstanding this limitation, the MANAGER is authorized to act according to the provisions of this paragraph should such attempts by unsuccessful and immediate action be required.

**2.07     Financial and Report Preparation.**  MANAGER shall maintain complete and accurate books and records on a cash basis of the ASSOCIATION's financial affairs in accordance with generally accepted accounting practices, including a balance sheet, a general ledger and subsidiary journals on the double entry method of accounting, separate and apart from the records of any other entity, and showing all income and expenses compared to budget. MANAGER shall cause to be prepared and submit to the Board on a monthly basis such reports as may be reasonably requested by the Board and consistent with the Board's duties pursuant to Civil Code 1365.

**2.08     Tax Return and Audit Preparation.**  MANAGER shall cooperate with and assist the ASSOCIATION's bookkeeper and/or certified public accountant in preparation of tax returns, audits and reviews of the financial statements.

**2.09     Year-end Financial Statement.** within one hundred twenty (120) days after the close of each year.  If the Board elects to distribute a summary pursuant to Civil Code 1365 ( c )

2

V17385

and any member requests a copy of the full financial statement be mailed to the member, MANAGER shall send a copy by first-class mail within five (5) days of the request.

**2.10    Budget Preparation.** MANAGER shall assist in the preparation of a pro forma operation budget as provided in Civil Code 1365 (a) and deliver such budget to the Board not less than sixty (60) days prior to the beginning of the ASSOCIATION's fiscal year. MANAGER shall distribute to members of the ASSOCIATION copies of such operation budget, as approved by the Board, not less than forty-five (45) days nor more than sixty (60) days prior to the beginning of the ASSOCIATION's fiscal year.

**2.11    Reserve Analysis.** MANAGER shall cooperate and assist the ASSOCIATION in preparation of reserve analysis.

**2.2    Liability For Use Of Financial Statements.** The ASSOCIATION shall have exclusive responsibility for the content and use of all approved financial statement, budgets and other financial documents prepared for the ASSOCIATION pursuant to Civil Code 1365. Except as provided in section 1.4 of Article I, the ASSOCIATION hereby agrees to indemnify and hold MANAGER harmless from all liability arising out of the content or use of all such documents. All draft financial statements, proposed budgets and/or other financial documents prepared by MANAGER pursuant to Civil Code 1365 shall be clearly marked "DRAFT" until approved by the Board.

**2.3    Deposits.** All monies collected by the MANAGER on behalf of the ASSOCIATION shall be deposited in such ASSOCIATION account(s) as may be directed by the Board, separate and apart from the funds of any other entity. MANAGER shall establish a system of controls to insure monies received shall be handled and deposited without loss or undue delay. MANAGER shall have no authority to sign checks or authorize withdrawals from ASSOCIATION reserve accounts.

### ARTICLE III
### General Administration

**3.1    Scope of Article,** MANAGER shall perform the following routine general administration services:

**3.01    Attend Board Meetings.** Attend up to SIX (6) regular Board meetings per year as may be directed by the Board. MANAGER has no obligation to attend regular Board meetings on weekends or holidays. The Board shall give MANAGER reasonable advance notice of all such meetings and make reasonable efforts to accommodate any conflict in MANAGER schedule.

**3.02    Attend Annual Meetings.** Attend one (one) regular annual meeting. MANAGER has no obligation to attend meetings on weekends or holidays.

**3.03    Minutes.** Take, transcribe and obtain approval of the minutes of all regular and special meeting of the Board, and general membership, and maintain chronological files of all minutes as duly adopted by that body.

**3.04    Meeting Notices, Agenda and Coordination.** Notice and coordination of convening of all Board, and general membership meetings, and prepare necessary materials such as notices, agenda, reports, ballots, proxies and similar items. MANAGER shall prepare and distribute Board and membership meeting agenda and supplementary materials at least three (3) days prior to a meeting.

**3.05    Owner Roster.** Maintain a current roster of the names and addresses of all unit owners.

**3.06    Correspondence.** Prepare and maintain records of all correspondence as directed by the Board.

3

V17386

**3.07   Record and File Maintenance.** Maintain current, accurate and orderly files of all correspondence and other documentation related to the operation and management of the ASSOCIATION.

**3.08   Sale/Resale Information.** Prepare and process all information required on the part of the ASSOCIATION with respect to the sale or resale of units, including but not limited to the documents required pursuant to Civil Code 1368.

**3.09   Resident Information Pamphlet.** Distribute a resident information pamphlet containing the policies and practices of the Association management as may be directed by the Board.

**3.10   Special Meetings.** Prepare and distribute special meeting notices as directed by the Board.

**3.11   Special Photocopying.** Handle special photocopying as may be directed by the Board.

**3.12   Specification/Bid Preparation.** Prepare and coordinate bid specifications as may be directed by the Board.

**3.13   Contract Documents.** Facilitate the preparation and execution of final contract documentation.

**3.14   Legal Liaison.** Provide liaison services with legal counsel as may be directed by the Board.

**3.15   Governmental Liaison.** Provide liaison services with local governmental authorities as may be directed by the Board.

**3.16   Rule Enforcement.** Assist in the enforcement of all rules and regulations set forth in the Project Documents.

**3.17   Insurance Liaison.** Develop and submit an insurance program for Board approval, and provide liaison services with insurance brokers and/or agents in obtaining insurance for the ASSOCIATION, Board and Officers.

**3.18   Office Hours.** Maintain normal office hours (8:00 a.m. to 5:00 p.m., Monday through Friday, except holidays) for communications related to ASSOCIATION business and provide a 24-hour emergency telephone number and answering service.

### ARTICLE IV
### Property Management

**4.1   Scope of Article.** MANAGER shall assist and/or advise the Board and/or employees and contractors of the ASSOCIATION in all matters related to the maintenance of the Project. MANAGER shall cause the common areas of the Project to be maintained according to standards established by the Project Documents and the Board. MANAGER shall perform the following routine property management services:

**4.01   Minor Repairs/Maintenance.** MANAGER shall be responsible for carrying out minor repairs and/or maintenance of the common area.

**4.02   Inspection of Contractor Performance.** MANAGER shall be responsible for supervising and inspecting the performance of work by all contractors, and insuring that the ASSOCIATION has all necessary contracts, bonds, insurance certificates, warranties and similar documentation on file.

**4.03   Landscape.** MANAGER shall be responsible for proper maintenance of the landscaping.

**4.04   Tennis Courts.** N/A

4

V17387

**4.05    Maintenance of Streets and Walks.** MANAGER shall be responsible for proper maintenance and sweeping of the streets and walks in common area on a periodic or as needed basis.

**4.06    Site Inspections.** MANAGER shall make twice monthly inspections the first 2 months and monthly inspections thereafter.

**4.07    Security.** N/A

### ARTICLE V
### Contracting Policies

**5.1    Administration of Contractors.** The manner of selecting contractors shall be specified by the Board. MANAGER shall submit recommendations to the Board with its evaluation of the bid's adherence to the specifications, and such other information as MANAGER deems may be helpful to the Board. After selection and retention, MANAGER shall oversee the activities of the contractor, including but not limited to, the obtaining of contract documents, certificates of insurance, copies of bonds, manufacturers' warranties and releases of liens. MANAGER shall review the quality of contractor's workmanship and process warranty claims. MANAGER also shall cooperate and assist consultants retained by the Board to accomplish specialized functions for the Association in the areas of law, public accounting, or other similar areas.

### ARTICLE VI
### Complaint Service Request Procedures

**6.1    Complaint/Service Request Procedures.** MANAGER shall develop and maintain a program to respond to all reasonable complaints and all reasonable requests for maintenance repairs and minor alterations in accordance with the procedures and guidelines adopted by the Board. MANAGER shall report monthly to the Board on all such complaints and requests. MANAGER shall prepare and distribute to the members a guide outlining and service request procedures.

### ARTICLE VII
### Compensation of Manager

**7.1    Scope of Article.** Unless otherwise specifically agreed in writing, MANAGER shall be compensated under this Agreement exclusively as provided in this Article.

**7.2    Routine Services.** The Association shall pay MANAGER a base fee of $15.00/door per month for routine services specifically designated in Article II, III, IV,V, VI, and VIII, including those services listed in the Scope of Work attachment for which an "X" has been placed in the "included in flat fee" column. In addition, the ASSOCIATION shall pay MANAGER additional compensation in accordance with the following schedule:

(1) Preparing and recording assessment lien   $100.00 for each lien*

(2) Preparing and recording release of lien   Included

(3) Processing returned checks   $10.00 plus postage for each check*

(4) Association mailing unless mailed   $10.00 per hour plus photocopying
with billing.   Stationary and postage costs

5

V17388

| | |
|---|---|
| (5) Association mailings unless mailed with billing. | $.10 per label |
| (6) Photocopying | $.15 per page, one side, $.20 per sheet, two sides |
| (7) Providing documents for sales of unit | $50.00 per document package* |

(*Items that may be charged to an owner's account, if appropriate, provided authority exists under Project Documents.)

## ARTICLE VIII
### Books, Record, Inspection and Audit

**8.1    Book and Records.**  MANAGER shall maintain a comprehensive system of books and records in a manner satisfactory to the Board and/or as set forth in this Agreement.  Copies of contracts, filings with public agencies and financial books and records shall be maintained at the principal office of the MANAGER.  Originals of all books and records may be maintained in the custody of MANAGER; however, they shall be the property of the ASSOCIATION and delivered to the ASSOCIATION or its representative immediately upon demand.

**8.2    Inspection.**  Except for materials designated as confidential by the Board, all books and records maintained either at the ASSOCIATION's offices or in  MANAGER's offices shall be made available for inspection by any and all unit owners or their authorized representatives, upon reasonable notice, during normal business hours.  Access to confidential materials shall be allowed only as authorized by the Board.

**8.3    Audit.**  MANAGER shall cooperate fully with the independent certified public accountant in the conduct of the annual audit and shall make all records, books and accounts available for their inspection and review.

## ARTICLE IX
### Insurance

**9.1    Maintenance of Insurance by ASSOCIATION.**  The ASSOCIATION agrees to purchase and maintain a policy of comprehensive general liability insurance with a limit of no less than $ 1,000,000 per occurrence in coverage for bodily injury (including death), property damage and contractual liability, which shall name MANAGER as an additional insured for all loss liability and expenses, including costs of defense, arising out of or in any way connected with the maintenance, repair or condition of the managed promises.  The ASSOCIATION also agrees to name MANAGER as additional insured to the Directors and Officer Liability Insurance Policy. Such insurance shall be primary and non-contributory to any insurance maintained by MANAGER and shall include a cross-liability endorsement.  The ASSOCIATION shall deliver to MANAGER a certificate of insurance evidencing such policy within ten (10) days of execution of the Agreement, and such certificate shall provide that MANAGER be given thirty (30) days notice of cancellation or diminution in coverage.

## ARTICLE X
### Termination and Renewal

6

V17389

**10.1    Notice of Termination.**  This agreement may be terminated by either party on not less than sixty (60) days written notice, which notice may be given at any time during a month, provided that, in any event, the termination shall be effective at the end of the second calendar month following the month during which notice is give.  Upon termination of this Agreement, MANAGER shall, within 5 working days, deliver to the President or other duly authorized Board member, all books, paper, records, documents, funds, passbooks, checks, and other property of the ASSOCIATION that are in the possession or under the control of MANAGER.

**10.2    Renewal.**  At the expiration of the term of this Agreement, if not renewed in writing nor terminated by either party, the Agreement shall continue on a month-to-month basis until terminated by either party upon not less than thirty (30) days written notice, which notice may be given at any time during the month, provided that, in any event, the termination shall be effective at the end of the calendar month following the month during which notice is given.

**10.3    Cooperation In Transition.**  MANAGER shall continue to perform all its duties and responsibilities under this Agreement after notice of termination until the termination date. MANAGER and ASSOCIATION agree to cooperate fully with one another to transfer ASSOCIATON property, to execute whatever documents, and to take whatever other action may be necessary prior to termination to cause an orderly transition of ASSOCIATION management to a new manager.  After termination, ASSOCIATION shall compensate MANAGER at the rate set forth in Paragraph 6.3 of Article VII, above, for additional services requested by ASSOCIATION in assisting in such transition.

**10.4    Liquidated Damages.**  In the event the ASSOCIATON terminated this Agreement without good cause during the first six (6) months of its term, the ASSOCIATION shall pay to MANAGER as liquidated damages one full month's fee for routine services.

## ARTICLE XI
### Miscellaneous

**11.1    Modification and Status.**  This writing is intended by the parties as a full expression of their Agreement, and all negotiations and representations between the parties having been incorporated herein.  No variation, modification, or changes of the Agreement shall be binding unless it is made in writing and executed by both parties.

**11.2    Applicable Law.**  This Agreement shall be construed in accordance with the laws of the State of California.

**11.3    Conflict of Interest.**  MANAGER shall not accept from any party providing goods and services to the ASSOCIATION, including vendors and independent contractors, any remuneration or consideration in any manner or form, as consideration for or inducement to MANAGER for using the party's goods or retaining their services on behalf of the ASSOCIATION, all such benefits shall be the property of the ASSOCIATION.

**11.4    Affiliated Interest.**  MANAGER shall not enter into any agreement to provide goods or services to the ASSOCIATION with any party, partnership, corporation, or other entity related to or affiliated with MANAGER, its directors, officers, and employees without prior written approval of the Board.

**11.5    Attorney's Fees.**  If any legal action is necessary to enforce the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees in addition to any other relief to which or it may be entitled.

**11.6    Arbitration.**  Any dispute or controversy among the parties hereto or arising out of this Agreement shall be determined by arbitration conducted by one arbitrator agreed to by both parties. The prevailing party in any arbitration or litigation arising hereunder shall be entitled to an award of costs and expenses, including reasonable attorney's fees.

V17390

**11.7   Assignment, Merger and Consolidation.**  MANAGER shall not assign, either in whole or in part, this Agreement, and this Agreement shall be subject to termination after a merger or consolidation of MANAGER with another person or entity, unless MANAGER obtains prior written approval of the Board.   Failure to secure prior approval shall be cause for termination of this Agreement at the sole option of the Board.

**11.8   Access.**  In order to perform the duties hereunder, MANAGER shall have access to ASSOCIATION property and to other properties to the extent afforded the ASSOCIATION pursuant to the Project Documents.

**11.9   Notice.**  All notices to the ASSOCIATION shall be in writing and mailed postage prepaid to the designated address of the ASSOCIATION president.  All notices to MANAGER shall be in writing and mailed postage prepaid to the current or last known business address of MANAGER.

　　　　**IN WITNESS WHEREOF,**  the parties hereto have executed this Agreement as of the day and date first above written.


By: _Tina Schmitt Loyd_　　　　Date: _2-25-01_


By: _C. Bates_　　　　Date: _3/30/01_
　　　For Jean Bates & Associates, INC.

V17391

<u>Fee Schedule</u>

| | |
|---|---|
| Reproduction | $   .15/each |
| Base Computer Usage | $  0.35/unit |
| Special Accounting | $ 50.00/each |
| Special Assessment Billing | $   2.75/Unit |
| Delinquent Accounts -charged to homeowner account | |
|     1.  Preparation and release of lien | $100.00/each |
|     2.  Report of past due account requested by homeowner | $ 25.00/each |
|     3.  Transfer fee | $ 50.00/each |
| Request for Master file printout | $ 25.00/each |
| Request for labels | $   0.15/each label |
| Returned check charges to homeowner in addition to all bank charges | $  7.00/per check |
| Attending Committee Meetings unless<br>held during business hours or prior to Board Meeting. | $100.00/Per hour |
| Board Meetings lasting over 2 hours or past 9:00 p.m. | $100.00/per hour |
| Mailing Service if required other than with monthly statement | $   0.25/per item plus<br>photocopy & |

envelope

Any charges generated at the request of a homeowner or as a result of a homeowners actions or
lack of actions will be assessed against their account.  The Association will pay management for
all fees as they are billed.

V17392

Dear Board Members:

In accordance with California Code Section 1363.1 this written statement is being provided to the Board of directors. It is understood that you have, or are considering, entering into a management agreement with Jean Bates & Associates.

Jean Bates & Associates is a corporation, incorporated in the State of California. Those directors and officers and shareholders holding greater than 10 percent of the shares of the corporation are;

Clifford J. Bates
3840 Blackhawk Road, Suite 120
Danville, CA 94506

There are currently no relevant licenses issued by the State of California. Neither the person nor the company listed above hold any relevant licenses issued by the State of California. Jean Bates & Associates holds a current business license issued by the County of Contra Costa, is a member of the Community Association Institute, California Association of Community Managers, Construction Specification Institute, Building Industry Association and Danville Chamber of Commerce.

The Community Association Institute has confirmed that the designation of Professional Community Association Manager has been attained by Clifford J. Bates, Leslie J. Bates, and Peter Williams. The California Association of Community Managers has confirmed that the designation of Certified Community Association Mangers has been attained by Clifford J. Bates, Leslie J. Bates, and Peter Williams. A Real Estate License issued by the State of California is held by Nicole Affinito.

Signed,
JEAN BATES & ASSOCIATES

Clifford J. Bates
President

V17393

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

## Scope of Work

| ITEM | DESCRIPTION | Included in Flat Fee | Not Included in Flat Fee (Indicate Rate) |
|------|-------------|----------------------|------------------------------------------|
| Attend Board Meetings | Attend up to one (1) regular Board meeting every other month as may be directed by the Board. Manager has no obligation to attend regular Board meetings on holidays or for more than three (3) hours or any single meeting.  The Board shall give Manager reasonable advance notice of such meetings and make an effort to accommodate any conflict in Manager's schedule. | X | 2 hours incl. |
| Attend Committee Meetings | Manager shall attend three (3) committee meetings per year or such lesser number as the Board may direct.  Manager shall not be obligated to attend meetings on weekends or holidays or for more than two (2) hours for any single meeting. | X | |
| Minutes | Manager shall take minutes and prepare a record of action taken at Board and general membership meetings attend pursuant to this Agreement, and shall maintain a chronological file of all duly adopted minutes and resolutions. | X | |
| Meeting Notices, Agendas & Coordination | Manager shall schedule, notice and coordinate the Board and general membership meetings, and shall prepare necessary materials such as notices, agendas, reports, ballots, proxies and similar items.  Manager shall prepare and distribute Board and membership meeting agendas and supplementary materials at least ten (10) days prior to a meeting. | X | |
| Owner Roster | Manager shall maintain a current roster of the name addresses and to the extent readily available, telephone numbers of all unit owners. | X | |
| Correspondence | Manager shall receive and review Viewpoint at the Ridge correspondence, and shall prepare and send such correspondence as may be appropriate. | X | |
| Record & File Maintenance | Manager shall maintain the records and files relating to the operation and management of the Viewpoint at the Ridge as required by law. | X | |
| Sale & Resale Information | Manager shall prepare, distribute and process information required of the Viewpoint at the Ridge with respect to the sale or transfer of a condominium unit. | X | |

Copyright 1996 - 2000
**The Helsing Group, Inc.**
All Rights Reserved

_ 1 of 12

V17394

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

| ITEM | DESCRIPTION | Included in Flat Fee | Not Included in Flat Fee (Indicate Rate) |
|---|---|---|---|
| Resident Information Pamphlet | Manager shall assist in updating and distribution of information materials regarding the rules and policies of Viewpoint at the Ridge to the owner. | X | |
| Emergency Services | Manager shall provided after-hour answering and/or emergency assistance service as may be necessary for the health, safety and well being of the occupants of the Property. | X phone work | X extra for site visits |
| Rule Enforcement | Manager shall assist the Board in enforcing the Project Documents. | X | |
| Insurance Liaison | Manager shall obtain and submit an insurance program for Board review, and provide liaison services with Viewpoint at the Ridge insurance brokers and/or agents. | X | |
| Office Hours | Manager shall maintain normal office hours Monday through Friday (expect holidays) for communications related to Viewpoint at the Ridge business, and shall provide a 24-hour emergency telephone number and/or answering service. | X | |
| Documents to Prospective Purchaser | Upon written request of a unit owner who has contracted to sell his community association interest and as required by California Civil Code Section 1368, manager shall, within 10 days of the mailing or delivery of the request, provide such owner with such information or documentation as the owner may be entitled under California Civil Code Section 1368. | X | |
| Ordinary Maintenance/Repair of Common Area | Manager shall schedule and monitor maintenance and repair of the common area, including the following; common area structures, walks, and gutters; spa(s) and related equipment; painting; plumbing; janitorial services; trash collection; garage/carports; and landscape areas. | X | |
| Major Repairs/Alterations of Common Area | Any repairs, structural changes, alterations or additions to the common area, or any portion thereof, that requires an expenditure of more than $500.00 shall be deemed major repairs/alterations and require specific Board authorization. | X | |

Copyright 1996 - 2000
**The Helsing Group, Inc.**
All Rights Reserved

V17395

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

| ITEM | DESCRIPTION | Included in Flat Fee | Not Included in Flat Fee (Indicate Rate) |
|---|---|---|---|
| *Specification/Bid Preparation* | Manager, at the request of the Board, shall obtain competitive bids for the work and submit them to the Board. The Board shall then decide which company or professional to hire to do major repairs. Manager shall coordinate and monitor the work in progress, but shall not supervise or be responsible for the satisfactory completion of the work. The Board shall hire a construction supervisor, if appropriate, and that party shall supervise and ensure satisfactory completion of the work. | X | |
| *Property Inventory* | Maintain an inventory of all Viewpoint at the Ridge property with complete records regarding the acquisition and disposition of property. | X | |
| *Work Order Processing* | Manager shall prepare and implement a system to receive and respond to work order requests from owners and shall report in writing on the status of the requests and work in progress to the Board on a periodic basis. | X | |
| *Site Inspection* | Manager shall make **one (1)** routine site inspections per month covering the entire common area. | X | |
| *Periodic Building/Amenity Inspection Report* | Manager shall prepare and present for Board review on a periodic basis a written building/amenity inspection report recommended maintenance and repairs. | X | |
| *Assessment Collection* | Manager shall cause to be prepared and mailed assessment billing statements to the membership as the Board may direct, and shall bill the owners, as necessary, for other assessments, fees and charges levied by the Association. Manager shall cause the collection and, as necessary, the receipt for all assessments, fees, charges or other income received by the Association. | X | |
| *Deposit of Collections (NOTE – Not Applicable for Direct Deposits)* | Manager shall deposit all moneys collected into the appropriate Viewpoint at the Ridge account(s) within three (3) business days of receipt. Manager shall also maintain the records of the Viewpoint at the Ridge's interest bearing reserve accounts pursuant to a reserve schedule to be provided by Viewpoint at the Ridge, along with such other funds as Board may direct. | X | |

Copyright 1996 - 2000
**The Helsing Group, Inc.**
All Rights Reserved

V17396

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

| ITEM | DESCRIPTION | Included in Flat Fee | Not Included in Flat Fee (Indicate Rate) |
|---|---|---|---|
| Disbursements | Manager shall cause regular disbursement from Viewpoint at the Ridge's operating accounts all expenses and obligations authorized to be paid and on behalf of the Association as set forth in this Agreement. Manager shall have no authority to sign checks on any accounts or authorize withdrawals or authorize transfers from Viewpoint at the Ridge's reserve accounts. | X | |
| Delinquency Follow-Up | Manager shall be responsible for collecting delinquent assessments and other charges in accordance with the policies and procedures of the Viewpoint at the Ridge. Manager shall cause to be maintained, delinquent assessment records, and shall submit to the Board a monthly aged monthly delinquent assessment list at each regular Board meeting or as otherwise directed by the Board. Manager shall act as liaison between the Board and retained counsel and/or a collection service to provide the information and records necessary to pursue collection of delinquent accounts. Manager may charge an additional fee for filing and releasing liens and for costs associated with participating in any collection action. | X | x lien & release $100 total billed to delinquent owner |
| Invoice Approval | Manager shall review and approve all invoices for budgeted items and other approved expenditures, and shall promptly report to the Board all apparent discrepancies or irregularities in invoices or Association expenditures that come to manager's attention. Manager shall submit all invoices for unbudgeted items and other unapproved expenditures to the Board for review and approval prior to payment. | X | |
| Invoice Payment | Manager shall not make any unapproved expenditure nor incur any obligation, either singly or in the aggregate during any one month, exceeding $500.00 without prior Board approval, except in case of an emergency threatening life or property or suspension of necessary utility or public services. In such an emergency, Manager shall attempt to contact a member of the Board for expenditure approval, but if unsuccessful, Manager is authorized to act in any reasonable manner to address the emergency situation. | X | |

Copyright 1996 - 2000
**The Helsing Group, Inc.**
All Rights Reserved

-4 of 12

V17397

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

| ITEM | DESCRIPTION | Included in Flat Fee | Not Included in Flat Fee (Indicate Rate) |
|---|---|---|---|
| *Payroll Accounting for Employees* | Manager shall not be responsible for payroll and payroll accounting for Viewpoint at the Ridge employees except by separate written agreement. | N/A | |
| *Financial & Report Preparation* | Manager shall maintain or cause to be maintained by an outside service, complete and accurate financial books and records for the Viewpoint at the Ridge in accordance with generally accepted accounting, separate and apart from those of any other entity. Manager shall prepare and submit to the Board on a periodic basis such financial reports as the Board may reasonably request. | X | |
| *Tax Return & Audit Preparation* | Manager shall assist the Viewpoint at the Ridge and its bookkeeper, certified public accountant or other financial consultant in preparing tax returns, audits and financial reviews. Manager shall distribute copies of the year-end financial review to the membership within 120 days after the close of the Viewpoint at the Ridge's fiscal year or as otherwise required by law. | X | |
| *Budget Preparation* | Manager shall assist in the preparation of a pro forma operating budget as required by Civil Code Section 1365(a) so that it is available to the Board not less then sixty (60) days prior to the beginning of the Viewpoint at the Ridge's fiscal year, unless the Board elects to distribute a summary of the pro forma operating budget pursuant to Civil Code 1365(c). If the Board elects to distribute a summary pursuant to Civil Code 1365(c) and any member requests a copy of the full financial statements to be mailed to the member, Manager shall send a copy by first-class mail within five (5) days of the request. BUDGET PREPARATION INCLUDES ALL DISCLOSURES REQUIRED BY THE CIVIL CODE TO BE DISIMINATED ANNUALLY AS PART OF OR WITH THE BUDGET – OR DURING THE SAME GENERAL TIME PERIOD. | X | |
| *Lien Enforcement Policy & Practices* | Manager shall assist in the preparation of a statement describing the Viewpoint at the Ridge's policies and practices in enforcing lien rights or other legal remedies for the collection of delinquent assessments against Viewpoint at the Ridge members, and distribute the statement to the membership during the sixty-day period immediately prior to the beginning of the Association's fiscal year. | X | |

Copyright 1996 - 2000
**The Helsing Group, Inc.**
All Rights Reserved

V17398

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

| *ITEM* | *DESCRIPTION* | *Included in Flat Fee* | *Not Included in Flat Fee (Indicate Rate)* |
|---|---|---|---|
| *Reserve Study* | Manager shall schedule & coordinate of a periodic reserve study required by Civil Code 1365(d) if an outside service is utilized. | ✗ | |
| *Liability For Use of Financial Statements* | Viewpoint at the Ridge shall have exclusive responsibility for the content and use of all approved financial statements, budgets and other financial documents prepared by or at the direction of Viewpoint at the Ridge. The Association hereby agrees to indemnify and hold Manager harmless from all claims, expenses, actions, liabilities and damages (including attorney's fees and litigation costs) arising out of the content or use of all such documents, Any draft financial statements, proposed budgets, draft reserve studies and/or other financial documents prepared pursuant to Civil Code 1365 shall be marked "DRAFT" until approved by the Board. | ✗ | |
| *Administration of Contracts* | The Board shall select all contractors, vendors and service providers unless Manager is instructed by the Board to make the selection.  After selection and retention, Manager shall schedule and monitor the activities of the contractor, vendor or service provider, including without limitation, the obtaining of contract documents, certificates or insurance, copies of bonds, warranties, releases of liens and other necessary or prudent documentation. Manager shall monitor the work in progress; keep the board apprised of its status and process warranty claims.  Manager also shall cooperate and assist professional consultants retained by the Board. | ✗ | |
| *Complaint/Service Request Procedures* | Manager shall develop and maintain a program to respond to all reasonable complaints and all reasonable requests for maintenance repairs and minor alterations in accordance with the procedures and guidelines adopted by the Board.  Manager shall report monthly to the Board on all such complaints and requests.  Manger shall prepare and distribute to the members a guide outlining complaint and serve request procedure. | ✗ | |

Copyright 1996 - 2000
**The Helsing Group, Inc.**
All Rights Reserved

V17399

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

| ITEM | DESCRIPTION | Included in Flat Fee | Not Included in Flat Fee (Indicate Rate) |
|---|---|---|---|
| (1) Lien Actions<br>(2) (IF YOU CONTRACT OR RECOMMEND THESE SERVICES BE CONTRACTED TO A THIRD PARTY SO INDICATE IN RIGHT HAND COLUMN) | - Preparing notification of intent to lien<br>- Preparing and recording assessment Lien<br>- Preparing notification of intent to foreclose<br>- Coordination of foreclosure<br>- Preparing and recording release of lien | X | X<br><br>recommend professional<br><br>X |
| (2) Providing documents for sale of unit | - Articles of Incorporation<br>- Bylaws<br>- Budget – (current year)<br>- Covenants, Condition & Restrictions<br>- Fidelity Bond<br>- Rules & Regulations<br>- Transfer Fee<br>- Demand Fee<br>- Rush Fee (within 48 hours | X | X<br>X<br><br>X<br>X<br>X<br>X<br>X<br>X |
| (3) Compilation of financial forecast | Preparing Annual Budget. | X | |
| (4) Mailing of registered/certified letters | Mailing of correspondences. | X | at cost |
| (5) Processing return checks or generating out –of-cycle checks | Processing of checks. | | X $7.00 each |
| (6) Association mailings | Preparing all Association correspondences. | X | |
| (7) Responding to governmental agency requests or filings request | Includes ensuring that processionals (CPA's for taxes, etc.) are recommended to the Board for contracting in a timely manner. | X | |
| (8) Word processing for documents | Preparing Association Newsletter or other documents. | X | |
| (9) Providing owner payment history | Review of owner payment history files. | X | X $25.00 fee to owner for print-out |
| (10) Providing mailing lists | Providing the Association Members with a mailing list. | X | |
| (11) Materials & Supplies Expense | - Mailing labels<br>- Envelopes – standard<br>- Envelopes – large manila<br>- Photocopies<br>- Postage<br>- Long distance telephone calls<br>- FAX transmissions<br>- Binders/Archives boxes/file | X<br>X<br><br>X<br>X<br>X | X $0.15 /each<br><br>X $0.15 in house<br>X cost |

Copyright 1996 - 2000
The Helsing Group, Inc.
All Rights Reserved

V17400

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

| ITEM | DESCRIPTION | Included in Flat Fee | Not Included in Flat Fee (Indicate Rate) |
|---|---|---|---|
| *Non-Routine Services* | Manager may, at the request of the Board, perform certain non-routine services for additional compensation at the rate of $_____ per hour, plus travel at one-half (1/2) such hourly rate and travel expenses actually incurred, or at such other rate of compensation as may be agreed upon in writing by Manager and Viewpoint at the Ridge.  Non-Routine services, including, but not limited to, the following: | | Fill in hourly rate for this service as well as milage rate. |
| *(1)* | Participating in any type of lawsuits or administrative proceeding, including without limitation lawsuits or proceedings involving the Viewpoint at the Ridge or any of its members, officers, directors, employees, agents or contractors, or in any way related to Viewpoint at the Ridge business, Viewpoint at the Ridge property, collection of delinquent assessments and/or enforcement of the Project Documents. | | x  $100/hour |
| *(2)* | Providing assistance in the investigation, evaluation and presentation of claims arising form defective workmanship, defective materials and/or substandard services in the development of construction of the Project. | x | |
| *(3)* | Processing insurance claims involving bodily injury and/or property damage beyond preparation and submission of the original claim.  Any such charges by Manager shall be submitted to the insurance company as part of the claim. | x | x  per hour for claims over $10,000 |
| *(4)* | Pursuing and prosecuting claims for delinquent assessments or other receivables. | x | |
| *(5)* | Carrying out corrective work to a private community association unit separate and apart from the common area. | x | |
| *(6)* | Attending more meetings of the Board, Committees or general membership than required. | | x $100/hour |
| *(7)* | Preparing or causing to be prepared architectural or landscape specifications, schematics, construction estimates, construction drawings and contracts for major renovation of repair of the common area. | x | |

Copyright 1996 - 2000
**The Helsing Group, Inc.**
All Rights Reserved

V17401

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

| ITEM | DESCRIPTION | Included in Flat Fee | Not Included in Flat Fee (Indicate Rate) |
|---|---|---|---|
| (8) | Providing assistance in emergency situations or responding to resident complaints at times other than normal working hours (8:30 a.m. to 5:30 p.m., Monday through Friday, except Holidays). Emergency calls during non-working hours requiring Manager to travel to the project will be billed at 1.5 time the rate for non-routine services with a minimum 2 hours charge per site visit. | | X |
| (9) | Revision of the project declaration, articles of incorporation and by-laws, but excluding revision of rules, regulations and policies of Viewpoint at the Ridge which shall be included in routine services. | X | |
| (10) | Negotiation and management of contracts with outside contractors that involve a contract price in excess of $5,000.00. | X | |
| (11) | Organizing, participating in and documenting common area acceptance and/or the release of bonds or other financial assurances which guarantee completion of the common area. | X | |
| (12) | Organizing, participating in and documenting incorporation of Viewpoint at the Ridge. | X | |
| (13) | Maintaining any type of roster or other information on non-owner residents. | X | |
| (14) | Participating in the initial sale, resale, financing or refinancing of a unit other than to provide information and documentation, or as otherwise required of Viewpoint at the Ridge by law. | X | |
| Resident Orientation & Participation Program | Update the Residents Handbook and the Residents Handbook Supplement annually. | X | |
| Directors Handbook | Update the Directors Handbook manual annual to inform the general membership of Viewpoint at the Ridge's operations, its organizational structure, the manner of conducting meetings and adopting polices and procedures, and setting forth the policies and procedures already in effect. | X | |
| Committee Handbook | Update the Committee Handbook annually. | X | |
| Employee Policy Manual | Prepare an employee policy manual which should include job descriptions, benefits program, hiring and firing procedures, and compensation policies. | N/A for this project | |

Copyright 1996 - 2000
**The Helsing Group, Inc.**
All Rights Reserved

V17402

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

Total Monthly Flat Fee for Flat Fee Services Listed Above          $3,000

    Amount of Flat fee attributable to Bookkeeping Services          $ 1,200

Is your proposal and bid contingent upon your firm providing?
    Bookkeeping Services?                                                      (Yes)   No
    If not – please indicate your Flat Fee for all but
      Bookkeeping Services Listed Above                          _____

Handyman Services are provided:   In House (your employees)   (Outside Contractors)  Other

    If in house, your California general Contractor's License Number is: _____
    If other, please explain below:

Do you carry Professional Liability (Errors and Omissions Insurance)?   Yes   (No)

    If yes, please indicate amount of coverage
      and provide proof of insurance:                            _____

Do you have a Fidelity Bond?   (Yes)   No
    Does the bond cover the handling of client moneys?   Yes   (No)

    If yes, please indicate amount of bond
      and Name of Bonding Company:                               _____

Are you a:   ✗ Professional Community Association Manager (PCAM)
        ✗ Certified California Association Manager (CCAM)
        Other (Please Indicate)_____

Does your firm belong to:          ✗ Community Associations Institute (CAI)
               Executive Council of Homeowners (ECHO)
               ✗ California Association of Community Managers (CACM)

Will you personally be managing this association?   Yes   (No)

    If no, do you know what employee will be?   (Yes)   No

    If yes, list name of employee that will be
      Managing the association                        Peter Williams

    Is this person a:  Professional Community Association Manager (PCAM)   yes
               Certified California Association Manager (CCAM)   yes
               Other (Please Indicate)_____

Copyright 1996 - 2000
**The Helsing Group, Inc.**
All Rights Reserved

V17403

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

Please Provide the Names, Addresses, and Phone Numbers of three Board members from at least three different associations you manage or have managed that may be contacted as references:

Name: Norberto Duenas President

Association: San Pedro Square

Address: 196 San Pedro Circle, San Jose CA 95110

Work Phone: (408) 277-4898

Home Phone: (408) 268-5175

Name: Jim Quinn, President

Association: Cherry Glen

Address: 2479 Jubilee Lane, San Jose, CA 95131

Work Phone: (408) 473-7871

Home Phone: (408) 946-2035

Name: Joe Schmidt, President

Association: Skyridge HOA

Address: 512 Sea Spray Ct., Pacifica, CA 94544

Work Phone:

Home Phone: (650) 355-6433

Please provide the names of three industry professionals as references:

Name: Karl Molineux, Esq. & Charlie Merrill, Esq

Association: Lawyer representing HOA's; Merrill & Nomura

Address: 6400 Village Parkway, Dublin, CA 94568

Work Phone: (925) 833-1000

Copyright 1996 - 2000
**The Helsing Group, Inc.**
All Rights Reserved

V17404

Viewpoint at the Ridge Owners Association
Desired Scope of Work for
Association Management

Name: _Alan Crandall, Chris Lucas, Larry Pothast_

Association: _Banking Services; Union Bank of California_

Address: _1800 Harrison St., 14th Floor, Oakland, CA 9461?_

Work Phone: _(800) 660-4053_

Home Phone: _n/A_

Name: _Jack Socher_

Association: _Farmer Insurance; General Broker_

Address: _4 West 4th Ave, #200, San Mateo, CA 94402_

Work Phone: _(650) 366-2303_

Home Phone: _____

In addition please provide:

Proof of general liability insurance
Automobile insurance covering all individuals from your firm who may be working
for you concerning this association outside of your office.
Proof of Workman's Compensation Insurance for your employees

Your Signature: _____

You Position: _President_

Copyright 1996 - 2000
**The Helsing Group, Inc.**
All Rights Reserved

V17405